## STATE OF CONNECTICUT *v.* MELVIN OWEN JAMES
### (11866)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued June 6—decision released September 3, 1985

*G. Douglas Nash,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*William Domnarski,* deputy assistant state's attorney, with whom, on the brief, were *Michael Sullivan* and *Carl Schuman,* assistant state's attorneys, for the appellee (state).

ARTHUR H. HEALEY, J. This appeal arises from the trial court's denial of the defendant's motion to withdraw his plea of guilty in this matter. We address the critical issue of whether, under our rules of practice, the failure of the trial court, prior to accepting the

defendant's plea, to advise him of the maximum possible sentence to which he would be exposed, constituted reversible error.

The salient facts are as follows. On February 11, 1981, the defendant was a passenger in a vehicle driven by Wesley Jackson. At approximately 2 p.m., police officers stopped the vehicle to check Jackson's motor vehicle license. During the stop and ensuing investigation, the police found an unregistered .38 caliber revolver in the car. The defendant later admitted that the gun was in his possession and that the driver, Jackson, had had no knowledge of it. On July 14, 1981, the defendant pleaded guilty under the *Alford* doctrine[1] to a charge of carrying a weapon in a motor vehicle in violation of General Statutes § 29-38.

At the hearing during which the defendant entered his guilty plea, the trial court, *Norcott, J.,* canvassed the defendant, who was represented by counsel, as to the nature of his plea. See Practice Book § 711.[2] In response to the court's inquiries, the defendant stated

[1] "A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." *State* v. *Palmer,* 196 Conn. 157, 169 n.3, 491 A.2d 1075 (1985); see *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] "[Practice Book] Sec. 711. —— ——ADVICE TO DEFENDANT

"The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to

that his plea was voluntary and that he understood he was waiving his rights to a jury trial, to remain silent, and not to incriminate himself. Further, the defendant acknowledged that he was satisfied with the advice of his attorney, that he was pleading guilty under the *Alford* doctrine, and that he understood that the state was not recommending a sentence. The defendant also stated that he understood and agreed with the state's version of the facts in this case. Before accepting the plea, however, the trial court did not inform the defendant of the maximum possible penalty for the offense to which he pleaded guilty, and it also failed to elicit expressly a waiver of his constitutional right to confront and cross-examine his accusers.

Thereafter, on September 22, 1982, the defendant, who had not yet been sentenced, appeared in court on a written motion to withdraw his guilty plea. As a ground for withdrawing the plea, the defense counsel cited the failure to comply with Practice Book § 711 and argued that the court had failed to inform the defendant of the maximum possible sentence for the offense. After a hearing, the trial court, *Chernauskas, J.*, denied the motion to withdraw the plea, stating that the defendant had been "made fully aware of everything involved here." The defendant then took an exception. The trial court, *Gray, J.*, sentenced the defendant on October 8, 1982, to imprisonment for a term of five years, suspended after three years, with five years of probation and a one thousand dollar fine.[3]

On appeal, the defendant claims that the trial court erred in denying the motion to withdraw his plea in that

the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself."

We have set forth in the appendix the transcript of the plea proceedings.

[3] On July 1, 1984, the trial court, *Gray, J.*, granted the defendant's motion to modify the sentence and remitted the fine. The imprisonment and probationary terms of the sentence remained unchanged.

the court failed in its canvass (1) to advise him of the maximum possible penalty for the offense to which he pleaded guilty, and (2) to elicit an express waiver from him of his federal constitutional right to confront and cross-examine his accusers. We agree with the defendant that it was reversible error to deny his motion to withdraw his plea.

"After a guilty plea is accepted but before the imposition of sentence the court is obligated [under Practice Book § 720[4]] to permit withdrawal upon proof of one of the grounds in § 721."[5] *State* v. *Torres,* 182 Conn. 176, 185, 438 A.2d 46 (1980); see also *State* v. *Lasher,* 190 Conn. 259, 265, 460 A.2d 970 (1983); *State* v. *Deboben,* 187 Conn. 469, 474, 446 A.2d 828 (1982). One of these grounds is that "[t]he plea was accepted without substantial compliance with Sec. 711." Practice Book § 721 (1); see generally *State* v. *Godek,* 182 Conn. 353, 357, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981).

---

[4] "[Practice Book] Sec. 720. ——WHEN ALLOWED

"A defendant may withdraw his plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his plea upon proof of one of the grounds in Sec. 721. A defendant may not withdraw his plea after the conclusion of the proceeding at which the sentence was imposed."

[5] "[Practice Book] Sec. 721. ——GROUNDS

"The grounds for allowing the defendant to withdraw his plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Sec. 711;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the court had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

The question here is whether the trial court's failure to inform the defendant of the maximum possible sentence to which his plea exposed him fell below the standard that constitutes "substantial compliance" with § 711.

Under our rules of practice, a trial judge must not accept a plea of guilty "without first addressing the defendant personally and determining that the plea is voluntarily made under Practice Book § 712 and that the defendant fully understands the items enumerated in Practice Book § 711." (Citations omitted.) *State* v. *Martin,* 197 Conn. 17, 23, 495 A.2d 1028 (1985). "Practice Book § 711 was promulgated to ensure that such guilty pleas are made voluntarily and with full knowledge of the waiver of constitutional rights." *State* v. *Suggs,* 194 Conn. 223, 226, 478 A.2d 1008 (1984). In pertinent part Practice Book § 711 requires that "[t]he judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands . . . (4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction . . . ." See also *State* v. *Godek,* supra.

The state does not dispute the defendant's contention that the trial court failed to comply with subsection 4 of Practice Book § 711 in that the defendant was not informed of the maximum possible penalty for the crime charged. Rather, the state argues that, because *the right to be informed of the maximum possible penalty for the crime charged is of nonconstitutional dimension,* to constitute reversible error the defendant must demonstrate that he would have pleaded differently had the court fully complied with Practice Book § 711. We do not agree.

We have stated that Practice Book § 711 (4) is an express recognition "[t]hat the defendant's awareness of the maximum sentence possible is an *essential* factor in determining whether to plead guilty . . . . " (Emphasis added.) *State* v. *Childree,* 189 Conn. 114, 126, 454 A.2d 1274 (1983). "The length of time a defendant may have to spend in prison is *clearly crucial* to a decision of whether or not to plead guilty." (Emphasis added.) *State* v. *Collins,* 176 Conn. 7, 9–10, 404 A.2d 871 (1978). Accordingly, Practice Book § 711 (4) *"require[s]* that the court determine that the defendant 'fully understands' those consequences." (Emphasis added.) *D'Amico* v. *Manson,* 193 Conn. 144, 155 n.9, 476 A.2d 543 (1984); see *State* v. *Anonymous (1980–9),* 36 Conn. Sup. 578, 580, 421 A.2d 557 (1980).

"The rules of statutory construction apply with equal force to Practice Book rules. *State* v. *Cook,* 183 Conn. 520, 521, 441 A.2d 41 (1981). 'Where the meaning of a statute [or rule] is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it.' " *Grievance Committee* v. *Trantolo,* 192 Conn. 15, 22, 470 A.2d 228 (1984), quoting *Connecticut State Board of Labor Relations* v. *Board of Education,* 177 Conn. 68, 73, 411 A.2d 28 (1979). The requirements of the rule are clear. We do not mandate that a trial court, in making the determinations required by § 711, speak in the very words of that rule because "[m]atters of reality, and not mere ritual, should be controlling." *McCarthy* v. *United States,* 394 U.S. 459, 467–68 n.20, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969), quoting *Kennedy* v. *United States,* 397 F.2d 16, 17 (6th Cir. 1968). In discharging its obligations under § 711, the court's inquiries need not be so restricted that "the [j]udge [must] mount the bench with a script in his hand"; *Sappington* v. *United States,* 468 F.2d 1378, 1380 (8th Cir. 1972); and although "not a script, perhaps, but [with] some sort of checklist, as a prompter,

so that whatever form the dialogue takes, all of the necessary lines will be delivered." *United States* v. *Fels,* 599 F.2d 142, 149 n.6 (7th Cir. 1979). Unfortunately, all the "necessary lines" required by § 711 were not delivered so as to make for conformity with the rule. It matters not that § 711 incorporates nonconstitutional as well as constitutional rights; the rule requires both be addressed. There was not on this record, as the state suggests, substantial compliance with § 711 because of the trial court's failure to address § 711 (4) at all.

In the present case, the record clearly discloses that the trial court accepted the defendant's plea without first determining that the defendant was aware of and understood the maximum possible sentence to which he was exposed. The plea was therefore accepted in contravention of Practice Book § 711 (4); see *State* v. *Eason,* 192 Conn. 37, 45, 470 A.2d 688 (1984); the requirements of which we have previously recognized as both "clearly crucial"; *State* v. *Collins,* supra; and "an essential factor"; *State* v. *Childree,* supra; to an accused's grave decision whether to plead guilty to any charged offense. In addition, there is nothing in the record to indicate that the defendant had actual knowledge of the maximum possible consequences of his plea. See *D'Amico* v. *Manson,* supra; see also *United States* v. *Hamilton,* 568 F.2d 1302, 1306 (9th Cir.), cert. denied, 436 U.S. 944, 98 S. Ct. 2846, 56 L. Ed. 2d 785 (1978); Bond, Plea Bargaining and Guilty Pleas (2d Ed. 1982) § 3.5 (b). The record, thus, in addition to disclosing the lack of any inquiry concerning the maximum possible sentence, is barren of any indication that this defendant was aware of, much less fully understood; see *D'Amico* v. *Manson,* supra; *State* v. *Anonymous (1980-9),* supra; the maximum potential punishment to which his plea exposed him.

To satisfy the requisites of Practice Book § 711 it is necessary to demonstrate on the record that a plea is

entered with the defendant's full understanding. If he did not fully understand the consequences of his plea, then grave questions arise pertaining to the voluntary nature of the plea and consequently its constitutional validity. Courts have so held where a defendant's awareness of the punishment or consequences is not evident from the record when the plea is taken. See, e.g., *State* v. *Cutler,* 121 Ariz. 328, 590 P.2d 444 (1979); *Commonwealth* v. *Kulp,* 476 Pa. 358, 382 A.2d 1209 (1978); *In re Vensel,* 88 Wash. 2d 552, 564 P.2d 326 (1977). A guilty plea must be voluntary in every respect. It differs in purpose and effect from an extrajudicial confession or admission because the plea by itself is a conviction and is the equivalent of a jury verdict of guilty. *Machibroda* v. *United States,* 368 U.S. 487, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962); *State* v. *Battle,* 170 Conn. 469, 365 A.2d 1100 (1976); *State* v. *Linsner,* 105 Ariz. 488, 467 P.2d 238 (1970).

In this case, then, the lack of substantial compliance with § 711 inheres in the trial court's failure to fulfill its duty as that rule requires.[6] One court has said that "[t]he maximum possible sentence provided by law for

---

[6] Practice Book § 711 imposes on the trial court an obligation to accept a plea to a criminal charge only when it is first satisfied that the requirements of the practice rules have been met. *Finley* v. *Manson,* 1 Conn. App. 260, 263, 470 A.2d 1234 (1984); see Practice Book §§ 711 through 713. Similarly, the rules of practice permit a withdrawal of a plea of guilty upon certain specified grounds. Practice Book §§ 720 through 722. One of these grounds is the lack of "substantial compliance" with § 711. See generally *State* v. *Lasher,* 190 Conn. 259, 460 A.2d 970 (1983); *State* v. *Godek,* 182 Conn. 353, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981).

The state cites the federal decision in *Kelleher* v. *Henderson,* 531 F.2d 78 (2d Cir. 1976), in support of its argument that "the right to be informed of the possible maximum penalty is a non-constitutional right that does not trigger automatic reversal when not given to the defendant" but that case is not persuasive here. In the state court systems, there appears to be a division of authority as to whether the failure to inform of the maximum potential penalty constitutes automatic reversible error. 21 Am. Jur. 2d, Criminal Law § 476. Because in this matter our rules express a "substan-

conviction of the offense charged is the most 'important consequence of the plea.' " *Wells* v. *State,* 396 A.2d 161, 162 (Del. 1978).

On these facts, therefore, we hold that the trial court's failure to grant the defendant's motion to withdraw his plea for lack of "substantial compliance" with § 711 was reversible error. It is therefore unnecessary for us to address the defendant's other claim of error.

There is error, the judgment is set aside and the case is remanded with direction to permit the defendant to withdraw his plea.

In this opinion the other judges concurred.

tial compliance" standard; Practice Book § 721 (1); we must, of course, decide the defendant's practice book claim on that ground.

The more recent better reasoned opinions recognize, however, that a trial court's failure to inform the defendant prior to plea of the maximum possible sentence constitutes valid grounds for withdrawal of that plea. See, e.g., *United States* v. *Palter,* 575 F.2d 1050 (2d Cir. 1978); *Carter* v. *State,* 291 Ala. 83, 277 So. 2d 896 (1973); *Pratte* v. *State,* 448 So. 2d 502 (Ala. Crim. App. 1984); *Wells* v. *State,* 396 A.2d 161 (Del. 1978); *Avery* v. *State,* 463 N.E.2d 1088 (Ind. 1984); *Commonwealth* v. *Kulp,* 476 Pa. 358, 382 A.2d 1209 (1978); see also *Commonwealth* v. *Fernandes,* 390 Mass. 714, 459 N.E.2d 787 (1984); *People* v. *Greene,* 414 Mich. 896, 323 N.W.2d 4 (1982); *State* v. *McMahon,* 213 Neb. 897, 331 N.W.2d 818 (1983); *State* v. *Martin,* 94 Wash. 2d 1, 614 P.2d 164 (1980); *State* v. *Barton,* 93 Wash. 2d 301, 609 P.2d 1353 (1980). Some cases have been remanded for a hearing on whether the defendant actually knew of the maximum sentence possibilities. See, e.g., *State* v. *Cutler,* 121 Ariz. 328, 590 P.2d 444 (1979); *State* v. *West,* 326 N.W.2d 316 (Iowa 1982); *State* v. *Fischer,* 218 Neb. 678, 357 N.W.2d 477 (1984); *State* v. *Curnyn,* 202 Neb. 135, 274 N.W.2d 157 (1979); *In re Vensel,* 88 Wash. 2d 552, 564 P.2d 326 (1977). Of course, an on-the-record showing that the defendant has been informed of the potential maximum sentence vitiates a challenge on these grounds. See *Durbin* v. *State,* 56 Md. App. 442, 446, 468 A.2d 145 (1983); *State* v. *Clark,* 217 Neb. 417, 422, 350 N.W.2d 521 (1984); *In re Hall,* 143 Vt. 590, 595, 469 A.2d 756 (1983). On the other hand, the court in one jurisdiction that seemed to denigrate claims of this nature, nevertheless, recognized that informing the defendant of the maximum potential sentence represents the better practice. See, e.g., *State* v. *Trott,* 338 N.W.2d 248, 253 (Minn. 1983); see generally Bond, Plea Bargaining and Guilty Pleas (2d Ed. 1982) § 3.5 (b).

## Appendix

The following transpired when the court conducted the original plea canvass in this case:

"The Court: Mr. James, you have plead [sic] guilty to a felony and I am going to ask you a few questions.

"Have you discussed this plea with your attorney, Mr. Kaplan?

"Mr. James: Yes, I have.

"The Court: Are you satisfied with the advice he has given you?

"Mr. James: Yes, I am.

"The Court: Are you pleading guilty voluntarily and for no other reason?

"Mr. James: Yes, I am.

"The Court: Do you understand by entering this plea of guilty, you are waiving your right to a jury trial?

"Mr. James: Yes, I am.

"The Court: Do you realize you are giving up your right of silence and privilege against self-incrimination?

"Mr. James: Yes, I do.

"The Court: Do you understand the recommendation in this case is that, in fact, there will not be a recommendation and that sentencing will be left up to be based on the pre-sentence investigation report? Do you understand that?

"Mr. James: Yes, I do.

"The Court: Do you understand the statement of facts by the prosecutor and do you agree with the statement of facts?

"Mr. James: Yes, I do.

"The Court: Do you understand that you have plead [sic] guilty under the Alford Doctrine as indicated by your attorney, Mr. Kaplan?

"Mr. James: Yes, I do.

"The Court: Do you understand that I will accept the plea under the Alford Doctrine?

"Mr. James: Yes, I do.

"The Court: Do you still wish to plead guilty under the Alford Doctrine?

"Mr. James: Yes.

"The Court: Gentlemen, do you know of any reason why the plea should be not accepted?

"Mr. Kaplan: No, your Honor.

"Mr. Sullivan: No, your Honor.

"The Court: The court will make a finding that the plea of guilty is entered under the Alford Doctrine and that a factual basis exists for the plea of guilty under the Alford Doctrine and I will accept the plea under the Alford Doctrine.

"I will also make a finding that he has entered this plea knowingly, intelligently and voluntarily with the assistance and advice of counsel, and he understands the consequences of his plea and I will make a finding of guilty in this matter.

"Pre-sentence investigation for September 21."