STATE OF CONNECTICUT *v.* KWEKU HANSON
(AC 29623)

Bishop, Harper and Mihalakos, Js.

---

Argued May 27—officially released October 6, 2009

 

*Kweku Hanson,* pro se, the appellant (defendant).

*Timothy F. Costello,* deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, and *Thomas J. O'Brien,* senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Kweku Hanson, appeals from the trial court's judgments of conviction, which were rendered following the denial of his motion, filed pursuant to Practice Book § 39-27,[1] to withdraw his pleas of guilty under three separate criminal docket numbers[2] to two counts of sexual assault in the second degree in violation of General Statutes (Rev. to 2005) § 53a-71 (a) (1), two counts of risk of injury to a child in violation of General Statutes (Rev. to 2005) § 53-21 (a) (2), one count of possession of child pornography in the first degree in violation of General Statutes (Rev.

---

[1] Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed . . .

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea . . . ."

[2] Although the defendant enumerates only one of three applicable docket numbers on his appeal form, he previously listed all three docket numbers intended for appeal on a docketing statement filed with this court. "In accordance with our policy not to exalt form over substance, we have been reluctant to dismiss appeals for technical deficiencies in an appellant's appeal form." *Rocque* v. *DeMilo & Co.,* 85 Conn. App. 512, 527, 857 A.2d 976, 986 (2004). We will address the defendant's claims pertaining to all three docket numbers.

to 2005) § 53a-196d[3] and two counts of tampering with a witness in violation of General Statutes § 53a-151. On appeal, the defendant claims that by denying his motions to withdraw his guilty pleas, the court abused its discretion because his pleas were made unknowingly and involuntarily. In support of that claim, the defendant argues that (1) the court's plea canvass was defective because it did not substantially comply with Practice Book §§ 39-19[4] and 39-20,[5] (2) his attorney rendered ineffective assistance at the hearing on his motion to withdraw the pleas by not allowing the defendant to testify and, subsequently, that the court should have conducted, sua sponte, an evidentiary inquiry at that hearing, and (3) the existence of several other pretrial constitutional violations rendered the pleas involuntary. We disagree and conclude that the defendant's

---

[3] At the time of the offense, possession of child pornography in the first degree did not carry a mandatory minimum sentence. See General Statutes (Rev. to 2005) § 53a-196d. Today, a conviction of possession of child pornography in the first degree is a class B felony carrying a five year, nonsuspendable sentence. See General Statutes § 53a-196d. There was a colloquy between the defendant's attorney and the prosecutor at a hearing on October 26, 2007, regarding the sentencing guidelines pursuant to the child pornography statute. The defendant, in fact, did not face a nonsuspendable sentence on the charge of possession of child pornography.

[4] Practice Book § 39-19 provides in relevant part that the court "shall not accept [a defendant's] plea without first addressing the defendant personally and determining that he or she fully understands . . .

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction . . . ."

[5] Practice Book § 39-20 provides: "The judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his or her counsel."

pleas were made knowingly and voluntarily. Accordingly, we affirm the judgments of the trial court.

The following facts and procedural history are relevant to our disposition of the defendant's appeal. The defendant, who was more than forty years old at the time of the offenses, was charged with several crimes stemming from sexual relationships with a fifteen year old female, A,[6] and her fourteen year old female cousin, B, between August, 2004, and September, 2005. The defendant practiced law in Connecticut for eighteen years. He came in contact with the two victims through his law practice. During the course of those relationships, the defendant videotaped himself having sexual intercourse with A at his law office and took sexually provocative photographs of both victims.

In September, 2005, the defendant reported to the police that his videocamera had been stolen from his motor vehicle. The person who had taken the camera was located, and she told police that she had seen what she believed to be child pornography on the video. The video was later identified as portraying the defendant having sexual intercourse with one of the victims, A. The police seized the defendant's camera and executed subsequent search warrants at the defendant's law office. The police discovered traces of semen on the defendant's carpet consistent with the sexual activities depicted in the videos, as well as more than fifty explicit photographs of the two victims on the defendant's computer.

Meanwhile, as the case that charged the defendant with sexual assault of B was pending, the defendant stayed in contact with B and her older sister, with whom

---

[6] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

he also had a sexual relationship. Over the course of this period, he threatened B and her sister and offered them money to set up an apartment if they would retract their statements to police. A did, at one point, retract her statement to police.

On July 25, 2007, the prosecutor informed the court that he and the defendant had engaged in plea discussions and were close to a plea agreement. The defendant affirmed to the court that this was true and asked for a continuance to consider the offer. The court granted a continuance with the understanding that the following court proceeding would be for the entry of pleas or to proceed to trial. The court then canvassed the defendant, who was acting pro se, and found that he was qualified to represent himself.

At his next court appearance, on August 2, 2007, the defendant pleaded guilty under three separate criminal docket numbers to two counts of sexual assault in the second degree, two counts of risk of injury to a child, two counts of tampering with a witness and one count of possession of child pornography in the first degree. His plea agreement included special terms of probation. The state offered a recommendation to the court for a total effective sentence of twenty-five years incarceration, suspended after six years, and thirty years of probation. The court again canvassed the defendant and accepted his pleas as being made knowingly, intelligently and voluntarily, and with knowledge that he had voluntarily waived his right to counsel.[7]

---

[7] The following colloquy took place:

"The Court: All right. Now, you do represent yourself, as I indicated before. And you understand that you have a right to an attorney?

"The Defendant: Correct.

"The Court: And you understand that if you're unable to afford an attorney, I would appoint one for you at no cost to you.

"The Defendant: Yes.

"The Court: Nevertheless, you elected to represent yourself; correct?

"The Defendant: Well, the court found me qualified. I think the last time I had that I was going to try to get a public defender. But the court—

On September 17, 2007, prior to sentencing, the defendant, again representing himself, filed a motion to withdraw his guilty pleas, as well as an affidavit in support of the motion. The defendant eventually hired counsel, who submitted a substitute motion on October 19, 2007, claiming that the court's plea canvass was defective, pursuant to Practice Book §§ 39-19 (2), (3), (4) and 39-20. The defendant's attorney did not incorporate the motion that the defendant filed pro se. On October 26, 2007, represented by counsel, the defendant argued that the court's plea canvass failed to comply substantially

"The Court: You had elected to represent yourself; is that correct?

"The Defendant: Yes.

"The Court: And I believe on a prior occasion I asked you this, but I will ask it again.

"The Defendant: Sure.

"The Court: You understand that there are dangers involved in self-representation.

"The Defendant: Yes, I do.

"The Court: You understand it's difficult for a person to be objective about his own criminal case. Do you understand that?

"The Defendant: Yes, I do.

"The Court: And you are a graduate of a high school, a college and a law school; correct?

"The Defendant: That's correct, Your Honor.

"The Court: And you were and are licensed to practice law in the state of Connecticut?

"The Defendant: That's correct.

"The Court: And you represented clients in the past in criminal cases; correct?

"The Defendant: That's true.

"The Court: You tried cases; correct?

"The Defendant: That's correct.

"The Court: So, you picked a jury?

"The Defendant: Yes. That's correct.

"The Court: You are familiar with the law of evidence?

"The Defendant: Yes, I am.

"The Court: You are familiar with the substantive law?

"The Defendant: Yes.

"The Court: You are familiar with the range of penalties involved and the charges in this case; correct?

"The Defendant: Yes, I am.

"The Court: All right. Is there any reason I should not accept your plea?

"The Defendant: No."

with Practice Book §§ 39-19 and 39-20 because the court failed (1) to address the mandatory minimum sentence, if any, (2) to notify the defendant that some of the sentences were nonsuspendable, (3) to notify the defendant of the maximum possible sentence for each charge and (4) to determine whether the defendant's pleas resulted from prior discussions with the prosecutor. The court orally denied the defendant's motion, affirmed that the court's canvass of the defendant was in substantial compliance with Practice Book § 39-19, determined that the plea was knowingly and voluntarily made and that it was based on a factual predicate.

On November 2, 2007, the defendant was sentenced pursuant to the plea agreement to a total effective term of twenty-five years incarceration, suspended after six years, and thirty years of probation. This appeal followed. Additional facts and procedural history will be provided as necessary.

I

The defendant's first claim is that the court abused its discretion in denying his motion to withdraw his pleas because the court's plea canvass failed to satisfy the requirements of Practice Book §§ 39-19 (2), (3), (4) and 39-20. The defendant claims that the court failed to ensure that he understood the minimum and maximum sentences on each charge, that each sexual assault charge carried a nonsuspendable sentence and that his pleas were a result of discussions with the prosecutor. We disagree.

As a preliminary matter, we identify the legal principles and the applicable standard of review that governs our examination of the defendant's claims. "[I]t is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty

verdict by a jury. . . . In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. . . . The . . . constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book [§§ 39-19 and 39-20]. . . . The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense." (Internal quotation marks omitted.) *State* v. *Reid*, 277 Conn. 764, 780, 894 A.2d 963 (2006).

"Before a guilty plea is accepted a defendant may withdraw it as a matter of right. Practice Book [§ 39-26]. After a guilty plea is accepted but before the imposition of sentence the court is obligated to permit withdrawal upon proof of one of the grounds in [Practice Book § 39-27]. . . . The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under [Practice Book § 39-27]." (Citation omitted; internal quotation marks omitted.) *State* v. *Barnwell*, 102 Conn. App. 255, 258–59, 925 A.2d 1106 (2007). "Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused." (Internal quotation marks omitted.) *State* v. *Gundel*, 56 Conn. App. 805, 812, 746 A.2d 204, cert. denied, 253 Conn. 906, 753 A.2d 941 (2000).

Our courts repeatedly have held that "only substantial compliance is required when warning the defendant of the direct consequences of a . . . plea pursuant to Practice Book § 39-19 in order to ensure that the plea is voluntary pursuant to Practice Book § 39-20." *State* v. *Malcolm*, 257 Conn. 653, 662, 778 A.2d 134 (2001),

citing *State* v. *Ocasio*, 253 Conn. 375, 380, 751 A.2d 825
(2000). "[A]s determined in a case-by-case evaluation,
only substantial compliance with those rules of practice
is necessary to arrive at the conclusion that the defen-
dant's pleas were made knowingly and voluntarily
. . . ." *State* v. *Irala*, 68 Conn. App. 499, 510–11, 792
A.2d 109, cert. denied, 260 Conn. 923, 797 A.2d 519
(2002).

To determine whether a court substantially has com-
plied with Practice Book § 39-19, we must consider
"whether accurate information would have made any
difference in [a defendant's] decision to enter [a] plea."
(Internal quotation marks omitted.) *State* v. *Irala*,
supra, 68 Conn. App. 511, quoting *State* v. *Domian*, 235
Conn. 679, 688, 668 A.2d 1333 (1996). In applying the
substantial compliance test, courts look to the record
for evidence that a defendant was aware of the elements
of his plea and knowingly entered that plea. See *State*
v. *Irala*, supra, 512. Our review of the transcript leads
us to conclude that the plea canvass substantially com-
plied with our rules of practice.[8] The defendant, when

---

[8] The following colloquy took place:

"The Court: Have you had any drugs, alcohol or medicine that would
keep you from understanding today's proceedings?

"The Defendant: Not really, no.

"The Court: Now, you are representing yourself; correct?

"The Defendant: That's correct, yes.

"The Court: And on an earlier date, I canvassed you to determine whether
you were qualified to represent yourself. And I believe I found you to be
qualified to represent yourself.

"The Defendant: That's correct.

"The Court: All right. Do you understand the elements of each offense
charged?

"The Defendant: Yes, Your Honor, I do.

"The Court: Do you understand the range of penalties, including the
maximum and minimum penalties?

"The Defendant: Yes, Your Honor, I do.

"The Court: Do you understand the evidence that the state claims it has
against you?

"The Defendant: I understand what the state claims that they have
against me.

asked, "[d]o you understand the range of penalties, including the maximum and minimum penalties?" replied, "Yes, Your Honor, I do."

Although the defendant was not explicitly apprised of the exact statutory penalties, our Supreme Court has

"The Court: Do you understand that by pleading guilty you're giving up the right to have a jury trial?

"The Defendant: That's correct.

"The Court: You also understand by pleading guilty you're giving up your right to confront and cross-examine the witnesses against you?

"The Defendant: Yes, Your Honor.

"The Court: You also understand by pleading guilty you give up your right against self-incrimination, in other words, your right to remain silent, and refuse to take the [witness] stand or say anything against your own interest in this case?

"The Defendant: Yes, I do.

"The Court: Is anybody forcing you or threatening you to enter your plea?

"The Defendant: No.

"The Court: Are you doing so voluntarily and of your own free will?

"The Defendant: Yes. . . .

"The Court: Do you understand that once I accept your plea, you may not take it back without my permission?

"The Defendant: Yes, I do.

"The Court: And do you want me to accept your plea?

"The Defendant: I suppose, yes. I suppose, yes, Your Honor, with this comment. It's not a caveat. It's a comment. I disagree with the facts recited by the state, um—

"The Court: Well, my next question—

"The Defendant: Sure. I'm sorry.

"The Court:—is going to be whether the factual claims made by the state's attorney are essentially correct. You don't have to agree with every detail. But is the claim substantially and essentially correct?

"The Defendant: (No response.)

"The Court: You had sexual intercourse with two underage females. And you tried to influence two of those two, as well as their cousin, to testify falsely or give false information in connection with the matter. That's my understanding of what is claimed. Is that essentially correct?

"The Defendant: That's the allegation, yes, Your Honor. I mean, that's the allegation.

"The Court: Is that essentially correct?

"The Defendant: Excuse me—yes, Your Honor. I'm disposing of the case.

"The Court: Repeat that please.

"The Defendant: Excuse me for a minute. Yes.

"The Court: The factual claims made by the state on all of these charges are essentially correct; is that correct? Is that true?

"The Defendant: Yes."

consistently held that such specificity is not required. "[T]he constitutional mandate is not strict adherence to [Practice Book § 39-19 (2)] but, rather, an understanding by the defendant of the actual sentencing possibilities." *State* v. *Domian*, supra, 235 Conn. 689. That a court expressly failed to inform a defendant of a mandatory minimum sentence "alone is not dispositive of the defendant's constitutional claim. We must determine, instead, whether, in light of all the circumstances evident from the record before us, the trial court's failure to inform the defendant of the statutorily required minimum sentence rendered his guilty plea unknowing or involuntary." Id., 687–88.

There is nothing in the record to indicate that the defendant's pleas were the result of a defective canvass. The defendant's familiarity with the statutes to which he pleaded guilty and his qualifications as an attorney were similarly canvassed. The court asked the defendant if he was familiar with the substantive law, to which he replied, "Yes." The court then followed up and asked if the defendant was "familiar with the range of penalties involved and the charges in this case," to which he replied, "Yes, I am." "Although some form of meaningful dialogue is preferable to monosyllabic responses by the defendant, we have never held that single-word responses require an automatic vacation of a guilty plea." *State* v. *Torres*, 182 Conn. 176, 179–80, 438 A.2d 46 (1980). "[I]t is well established that [a] trial court may properly rely on . . . the response of the [defendant] at the time [she] responded to the trial court's plea canvass . . . ." *State* v. *Stith*, 108 Conn. App. 126, 131, 946 A.2d 1274, cert. denied, 289 Conn. 905, 957 A.2d 874 (2008). The record shows that the defendant entered his plea knowingly, intelligently and voluntarily, and, therefore, his claim, pursuant to Practice Book § 39-19 (2), must fail.

Similarly, the defendant's claim that he was unaware that the two charges of sexual assault in the second degree carried nonsuspendable sentences is unavailing. The defendant was canvassed regarding the range of penalties on both July 25 and August 2, 2007, upon which he affirmed three separate times that he was, in fact, aware of the range of penalties in this case. There is no evidence in the record that the defendant was unaware of the applicable statutory penalties or that such ambiguity, if any existed, would have made a difference in his decision to plead guilty. Therefore, the defendant's claims pursuant to Practice Book § 39-19 (3) must fail.

Likewise, the defendant's claim that the court abused its discretion pursuant to Practice Book § 39-19 (4) by failing to canvass him regarding the potential maximum sentence for each individual charge must also fail. Our Supreme Court has stated that Practice Book § 39-19 (4) is an "express recognition [t]hat the defendant's awareness of the maximum sentence possible is an *essential* factor in determining whether to plead guilty . . . . The length of time a defendant may have to spend in prison is *clearly crucial* to a decision of whether or not to plead guilty . . . . Accordingly, Practice Book § 711 [now § 39-19 (4)] require[s] that the court determine that the defendant fully understands those consequences." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *James*, 197 Conn. 358, 363, 497 A.2d 402 (1985).

In determining whether there has been substantial compliance with Practice Book § 39-19 (4), we review the record to determine whether (1) the court accepted the defendant's pleas after determining that he was aware of and understood the maximum possible sentence to which he was exposed on each charge and whether, (2) if the court failed to ensure that the defendant understood, that he had actual knowledge of the

maximum possible consequences of his pleas. See *State* v. *James*, supra, 197 Conn. 364. If either prong is satisfied, then the guilty pleas substantially complied with Practice Book § 39-19 (4). Here, the defendant entered his pleas of guilty to multiple charges. When a defendant enters pleas to multiple charges, the plea canvass must ensure that he understands both the maximum possible sentence for each individual charge, and the maximum possible sentence from consecutive sentences. See Practice Book § 39-19 (4). In discharging its obligations under Practice Book § 39-19, however, the court's inquiry "need not be so restricted that the [j]udge [must] mount the bench with a script in his hand . . . and although not a script . . . all of the necessary lines [were] delivered." (Citations omitted; internal quotation marks omitted.) *State* v. *James*, supra, 363–64.

Our review of the record reveals that the court fulfilled its obligations under Practice Book § 39-19 (4). A court is permitted to rely on a defendant's responses during a plea canvass. See *State* v. *Johnson*, 253 Conn. 1, 40, 751 A.2d 298 (2000). The defendant was asked on three separate occasions if he understood the range of penalties, and each time he responded in the affirmative. The defendant was also asked if he understood the minimum and maximum penalties involved, and he responded, "Yes, Your Honor, I do." Furthermore, during the August 2, 2007 plea appearance, the defendant was given a twenty minute recess to confer with an attorney to discuss the plea agreement. The defendant, an attorney himself for eighteen years, had prior experience representing criminal defendants and affirmed that he was familiar with both the substantive law and the law of evidence in relation to this case. Finally, the defendant faced a consecutive sentence term of up to 100 years in prison for the crimes to which he pleaded guilty, as well as exposure to indictment by the federal government, which carried a potential

mandatory minimum sentence of fifteen years imprisonment.

The record offers no evidence that the defendant was unaware of the potential maximum sentence involved or that he would have chosen to turn down an offer of six years incarceration to face the aforementioned considerable exposure. We conclude on the basis of the record that the court's plea canvass substantially complied with Practice Book § 39-19 (4).

Last, the defendant claims, pursuant to Practice Book § 39-20, that the court abused its discretion in denying his motion to withdraw his guilty pleas because they were involuntary. Specifically, the defendant claims that the court failed to determine whether his pleas resulted from prior discussions between the prosecutor and the defendant or his counsel pursuant to Practice Book § 39-20. We disagree.

On July 25, 2007, the court questioned the defendant regarding a pending plea offer for an "agreed upon recommendation" by the state, to which the defendant replied, "I need time to think about it. I talked to . . . the prosecutor and explained to him, as I have done, consistently, this particular offer involves some time. I need to talk to my family. My wife is here. But I need some time, please." On August, 25, 2007, the court referenced the offer three times, and later during that hearing, the defendant specifically stated that he wanted to plead guilty and have the court accept his guilty pleas. The record clearly demonstrates that the defendant's pleas were voluntary and resulted from his prior discussions with the prosecutor. Accordingly, we conclude that the court did not abuse its discretion when it denied the defendant's motion on those grounds.

## II

The defendant's second claim is that (1) his attorney provided ineffective assistance of counsel at the October 26, 2007 hearing on the motion to withdraw the guilty pleas because counsel failed to allow the defen-

dant to testify and to present evidence, and (2) the court should have, sua sponte, conducted an evidentiary hearing. We find that the record is inadequate to conclude that the court abused its discretion by denying the defendant's motion to withdraw his pleas and, further, that the court did not abuse its discretion by choosing not to conduct, sua sponte, an evidentiary hearing. We will address each claim in turn.

## A

The defendant claims that his attorney was ineffective in failing to present the defendant's testimony at the hearing on the motion to withdraw the guilty pleas. We do not reach the merits of this claim, as the record before us is inadequate for our review. See *Flater* v. *Grace*, 291 Conn. 410, 420, 969 A.2d 157 (2009) ("as a general matter, the defendant is not entitled to appellate review of claims that were not raised in the trial court or on which there is an inadequate record"). The defendant's claim would be more appropriately raised through a petition for a writ of habeas corpus. The following additional facts are necessary to our discussion of the defendant's claim.

On October 26, 2007, the defendant was represented by counsel for the purpose of a hearing on the motion to withdraw the guilty pleas. Counsel for the defendant argued in favor of the motion, submitting to the court that it should evaluate the defendant's claims on the basis of the transcript from the August 2, 2007 plea proceeding. The court inquired of the defendant's counsel, "You're not—no evidence?" Counsel replied, "I'm not offering any evidence, Judge. No." The defendant's counsel later indicated to the court that the defendant wanted to testify; however, counsel did not want to put the defendant on the witness stand.[9]

---

[9] "Defense Counsel: He's also indicated, [Your Honor], just to digress a bit, he wants to take the [witness] stand to say that he did not understand. I allege that in my motion. But I just want to put on the record that he would, if—and if the court requires it, I can put him on the stand to say—

Typically, ineffective assistance of counsel claims arise from alleged constitutional defects that occur prior to a defendant's plea, not from alleged ineffective assistance during a hearing on a motion to withdraw that plea. We have held that claims of ineffective assistance of trial counsel should be presented by way of a petition for a writ of habeas corpus because there can be an evidentiary hearing disclosing whether considerations of trial strategy were involved, and the counsel whose conduct is questioned will have an opportunity to testify. *State* v. *McSwain*, 105 Conn. App. 258, 277, 938 A.2d 595, cert. denied, 286 Conn. 915, 945 A.2d 978 (2008). In addition, such a claim may also require expert testimony regarding the quality of trial counsel's conduct. See, e.g., *Johnson* v. *Commissioner of Correction*, 34 Conn. App. 153, 158, 640 A.2d 1007, cert. denied, 229 Conn. 919, 644 A.2d 914 (1994). Without a full evidentiary hearing, we are unable to evaluate the defendant's factual challenges to the conduct of his trial counsel.

The defendant's primary grievance with his attorney's performance is that his attorney did not allow him to testify and that his attorney failed to incorporate the defendant's pro se motion and attached exhibits into the October 26, 2007 proceedings. It is not within this court's purview to speculate as to the litigation strategies employed by the defendant or his attorney. There is no evidence in the record on which to support a claim that the strategies employed by the defendant's attorney had any bearing on the outcome of the October

"The Court: Well, I offered you the chance to present evidence. You said no.
"Defense Counsel: I did. I wanted to—
"The Court: We've had arguments, and now you want to—
"Defense Counsel: I do not want to put him on, [Your Honor].
"The Court: Oh.
"Defense Counsel: I do not want to put him on. [The prosecutor] indicated that [the defendant] knew about the pornography based on those motions that were filed. I'm asking the court to not consider those motions as providing the requisite knowledge on the pornography statute."

26, 2007 hearing on the defendant's motion to withdraw his pleas. A petition for habeas corpus is the appropriate forum for such a hearing. We decline, therefore, to consider this claim.

B

The defendant next claims that the court abused its discretion by failing to conduct, sua sponte, an evidentiary hearing on the enforceability of his guilty pleas. We disagree.

An evidentiary hearing is not required if the record of the plea proceeding and other information in the court file conclusively establishes that the motion is without merit. See *State* v. *Johnson*, supra, 253 Conn. 50. The burden is on the defendant to show a plausible reason for the withdrawal of a plea of guilty. *State* v. *Crenshaw*, 210 Conn. 304, 309, 554 A.2d 1074 (1989). To warrant consideration, the defendant must allege and provide facts that justify permitting him to withdraw his plea under Practice Book § 39-27. See *State* v. *Johnson*, supra, 51. In the present case, the defendant set forth insufficient facts to require an evidentiary hearing on his motion to withdraw his guilty pleas and, therefore, failed to satisfy his burden. The defendant's counsel, in his motion to withdraw the guilty pleas, failed to set forth facts supporting his legal assertions and failed to advance any specific grounds as to why the pleas were unknowing or involuntary.

Additionally, the defendant's assertion that his pleas were not made voluntarily and intelligently contradicts the detailed plea canvass conducted by the court, in which the defendant expressly stated that he understood the implications of his plea, that he was qualified to represent himself in preparing to plea and that he had entered his guilty pleas voluntarily. See id., 52. In light of the comprehensive canvass conducted by the court; see, e.g., footnotes 7 and 8 of this opinion; and

our previous conclusion that the defendant's plea was entered voluntarily with full knowledge of its consequences, the defendant's bare and unsupported assertion in support of his motion did not warrant an evidentiary hearing. See *State* v. *Johnson*, supra, 52.

Moreover, the court indicated its willingness to consider evidence if the defendant and his counsel wanted to present any. The court asked defense counsel, "You're not—no evidence?" Defense counsel stated in reply, "I'm not offering any evidence, Judge. No." Although the court had no responsibility to require the presentation of evidence in this case, the decision to forgo an evidentiary hearing rested squarely on the shoulders of the defendant. Defense counsel, for reasons absent from the record, chose not to present evidence. The defendant cannot prevail on a claim that the court failed to conduct an evidentiary hearing on the basis of his attorney's representation that no evidence would be presented.

Accordingly, the court acted within the legitimate bounds of its discretion by not conducting an evidentiary hearing, sua sponte, regarding the defendant's motion to withdraw his guilty pleas.

## III

Finally, the defendant asserts numerous nonjurisdictional claims[10] regarding defects that he alleged

---

[10] The defendant makes several pretrial claims, including that (1) he was severely ill and heavily medicated at the time of his plea, (2) the state breached its plea agreement, (3) the prosecutor delayed disclosure of or failed to disclose exculpatory information, (4) the prosecutor intimidated witnesses and vindictively used improper and dishonest methods to bolster the case against defendant, (5) the police forged documents to strengthen charges against the defendant, (6) the court failed to suppress certain video and photographic evidence, (7) the defendant was denied access to a law library and necessary paperwork, (8) the court was deliberately indifferent to the defendant's medical needs, (9) a court was biased against the defendant and issued a warrant for his arrest without probable cause, (10) a different court failed to issue a written decision and to address essential evidentiary suppression claims, (11) an attorney for the defendant failed to

occurred during the police investigation and pretrial process. The defendant claims that these constitutional violations rendered his pleas involuntary. We decline to review the merits of these claims.

Foremost, we find that the defendant's brief is inadequate in its legal arguments and recitation of facts necessary to sustain his constitutional contentions. "[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Marlow* v. *Starkweather*, 113 Conn. App. 469, 472, 966 A.2d 770 (2009).

While the defendant represented himself, he was a member of the Connecticut bar and worked as an attorney for eighteen years. Although the defendant's pro se status deserves some solicitude, "the statutes and rules of practice cannot be ignored completely." (Internal quotation marks omitted.) *Bennings* v. *Dept. of Correction*, 59 Conn. App. 83, 84, 756 A.2d 289 (2000). The defendant's extensive list of nonjurisdictional, constitutional claims lack the specificity and adherence to the rules of practice required for this court effectively to grant each claim serious consideration. Nonetheless, we will address, generally, the defendant's nonjurisdictional claims.[11]

relay the defendant's acceptance of an earlier plea offer to the state and (12) the state failed to give notice to the defendant on the charge of possession of child pornography.

[11] The defendant also claims that his convictions violated his right to be free of double jeopardy because the crimes of sexual assault in the second degree and risk of injury to a child share the same elements. The defendant's claim is both inadequately briefed and without merit. Our Supreme Court

"It is well established that an unconditional plea of guilty, made intelligently and voluntarily, operates as a waiver of all nonjurisdictional defects and bars the later assertion of constitutional challenges to pretrial proceedings." *State* v. *Johnson,* supra, 253 Conn. 80. "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett* v. *Henderson,* 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973).

"In general, the only allowable challenges after a plea are those relating either to the voluntary and intelligent nature of the plea or the exercise of the trial court's jurisdiction." *State* v. *Johnson,* supra, 253 Conn. 80. Issues must be fully disclosed on the record, and it is the duty of the appellant to provide the court with a record of properly admitted or sworn testimony before the trial court. *State* v. *Scales,* 82 Conn. App. 126, 132, 842 A.2d 1158, cert. denied, 269 Conn. 902, 851 A.2d 305 (2004).

During the defendant's plea canvass on August 2, 2007, the court apprised the defendant that by pleading guilty, he was giving up the right to a jury trial, the right to confront and to cross-examine witnesses and the right against self-incrimination. During that same hearing, the court stated to the defendant, "If you want a trial, you are entitled to one . . . . We will arrange that. And if you want to plead, it's going to be a guilty plea . . . ."

---

has clearly held that sexual assault in the second degree and risk of injury to a child are separate offenses and do not implicate double jeopardy. *State* v. *Bletsch,* 281 Conn. 5, 28–29, 912 A.2d 992 (2007).

There is no requirement that the defendant be advised of every possible consequence of such a plea or that the court assume the role of the defendant's counselor. *State* v. *Gilnite*, 202 Conn. 369, 383, 521 A.2d 547 (1987). "It is therefore not necessary for the trial court to canvass the defendant to determine that she understands that her plea of guilty or nolo contendere[12] operates as a waiver of any challenge to pretrial proceedings." Id., 383–84. "[A] trial judge who accepts a guilty plea need not advise the defendant that he thereby waives his right to appeal a non-jurisdictional error such as a denial of his motion to suppress evidence . . . ." Id., 384, quoting J. Bond, Plea Bargaining and Guilty Pleas (2d Ed. 1982) § 3.50.

Because the defendant knowingly and voluntarily entered his guilty pleas, he thereby waived his right to challenge on appeal any nonjurisdictional claims arising from the pretrial process. We therefore decline to review the merits of the defendant's claims.

The judgments are affirmed.

In this opinion HARPER, J., concurred.

BISHOP, J., concurring. Although I disagree with aspects of my colleagues' analysis, I agree that the judgments should be affirmed. Accordingly, and respectfully, I concur.

---

[12] One of the defendant's claims is that the court improperly refused to allow him to enter a plea of nolo contendere. Practice Book § 39-5 provides that the parties "may agree that the defendant will plead guilty or nolo contendere . . . ." The court acted within its discretion to require that the defendant plead guilty rather than nolo contendere in exchange for the accepted plea deal. Regardless, our Supreme Court has held that a plea of nolo contendere would have virtually the same legal effect as a guilty plea for the purposes of an appeal of this nature. See *State* v. *Martin*, 197 Conn. 17, 20 n.7, 495 A.2d 1028 (1985).