MICHAEL FLATER ET AL. *v.* KEVIN M. GRACE ET AL.
(SC 18253)

Rogers, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

412

Argued February 13—officially released May 5, 2009

*J. Christopher Kervick,* for the appellants (defendants).

*David M. Moore,* for the appellees (plaintiffs).

*Opinion*

KATZ, J. The defendant, Kevin M. Grace, individually and doing business as Grace Builders,[1] appeals from the trial court's decision denying his motion to open the judgment awarding the plaintiffs, Michael Flater and Tracy Flater, $92,831 in damages for the defendant's

_____

[1] In this opinion we refer to Grace in both his individual and business capacity as the defendant.

failure to complete and perform satisfactorily a home improvement contract. The essence of the defendant's claim is that it was an abuse of discretion and inequitable for the court not to open the judgment because the defendant, in deciding not to defend against the claims, had relied on an estimate that the plaintiffs submitted prior to the hearing in damages of only $7075 for the completion of the contract. We conclude that the trial court did not abuse its discretion in denying the defendant's motion to open the judgment, and, accordingly, we affirm the judgment.

The record reveals the following undisputed facts and procedural history. On September 29, 2006, the plaintiffs filed a four count complaint against the defendant alleging: breach of contract; unjust enrichment; breach of the duty of good faith and fair dealing; and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The complaint alleged the following facts. In August, 2002, the plaintiffs had executed a written contract with the defendant, a licensed home improvement contractor, to remove an existing deck on their home in Simsbury and to build in its place a three season enclosed room with an attached deck at a cost of $23,441. The contract called for the work to commence on or about October 1, 2002, and to be completed within three to four weeks after the start date. In mid-October, the defendant commenced work on the project. While the work was proceeding, the parties orally agreed to change the project to a four season room, but that agreement never was memorialized in a written agreement. In December, 2002, in light of the winter weather, the defendant ceased work but promised to complete the project in the spring. The defendant never returned to complete the project, despite numerous unsuccessful efforts by the plaintiffs to contact him in 2003 and 2004. The defendant had failed: to install certain components of the

project; to perform certain work in a workmanlike manner; and to perform work that conformed with the Simsbury town building code. The defendant also had failed to obtain the requisite permits and to put the second contract in writing, contrary to the requirements of the Connecticut Home Improvement Act under General Statutes §§ 20-427 (i) and 20-429 (a). By the time the defendant ceased work on the project, the plaintiffs had made four payments totaling $26,231, which exceeded the original contract cost but was consistent with the subsequent oral agreement.

The plaintiffs sought compensatory damages and court costs, as well as punitive damages and attorney's fees on the CUTPA count. The only count in their complaint that referred to specific damages was the CUTPA count, which alleged "damages, including but not limited to the expenditure of an additional [$7075] to rectify the said breaches of contract." The statement of damages filed with the complaint sought damages "in excess of $15,000 . . . ." The defendant filed an appearance on November 16, 2006, but thereafter never filed a responsive pleading.

On January 10, 2007, the plaintiffs filed a motion for default for the defendant's failure to plead. On January 19, 2007, the clerk's office entered a default. On May 3, 2007, the plaintiffs filed a motion for judgment on the default and for an order of payments. See Practice Book §§ 17-32 and 17-33. The order of payment sought a total of $66,412 in damages—"$26,231, the amount paid pursuant to the contract, $7025 to complete the home improvement contracted for . . . and $33,256 as double damages pursuant to [CUTPA]," plus $2000 in attorney's fees and costs. The plaintiffs also filed Michael Flater's affidavit of debt in which he attested to the sums paid to the defendant and asserted that he "may need to replace the work done, or spend $7025 to correct the work . . . ." In support of the latter

figure, the plaintiffs submitted an estimate from another builder that had been prepared almost three years earlier, which projected a cost of $7075 for the "[c]orrection of code violations and other deficiencies for [the room] addition . . . ."[2] The affidavit of debt further attested, however, that additional estimates were scheduled to be performed the next weekend "to confirm the sum of money needed to correct the problems created by the [defendant's] failure to complete the work . . . ."

On May 7, 2007, pursuant to Practice Book § 17-34, the trial court, *Graham, J.*, conducted a hearing in damages, which the defendant did not attend. At that hearing, the plaintiffs submitted affidavits, dated May 5, 2007, from two registered contractors who had inspected the defendant's work. Michael Flater testified that he had been informed by these contractors that it would be impossible to repair the project because it contained numerous code violations and was structurally unsound, thus necessitating *replacement* instead of repair. The affidavits reflected the contractors' estimates for replacement at $66,600 and $69,000. In light of this recently obtained information, the plaintiffs informed the court that they were seeking actual replacement cost rather than the amount paid to the defendant. At the end of the hearing, the trial court awarded damages on all four counts in the total amount of $92,831, plus court costs, and $2000 in attorney's fees on the CUTPA violation.[3]

---

[2] There appears to be a scrivener's error in the affidavit, which reflects an estimate of $7025, rather than the $7075 noted in the builder's estimate.

[3] The court awarded $92,831 in damages on each of the three counts alleging breach of contract, breach of the duty of good faith and fair dealing, and violation of CUTPA, and $26,231 on the count alleging unjust enrichment. The court noted that the damages would be added together. Although the court did not specify the basis of the $92,831 award, that amount is equal to the lesser of the two estimates for replacement, $66,600, plus the amount the plaintiffs had paid to the defendant under the contracts, $26,231.

On July 7, 2007, after unsuccessfully seeking to set aside the default because judgment already had entered; see Practice Book § 17-42; the defendant filed a motion to open the judgment. The defendant alleged as grounds for the motion that: (1) service of process was defective; (2) a good defense exists, namely, that the claim for damages is "grossly inflated"; and (3) the defendant "did not have the benefit of counsel but has since retained counsel." The plaintiffs filed an objection to the defendant's motion, asserting that: (1) the improper service claim is without merit because the defendant filed an appearance in the case prior to the entry of default and the ability to challenge personal jurisdiction had been extinguished; (2) the "grossly inflated" damages claim is unavailing because the plaintiffs presented affidavits and testimony in support of the damages awarded and the defendant waived his opportunity to challenge that evidence by choosing not to attend the hearing in damages; and (3) the plaintiffs' counsel had advised the defendant to obtain counsel, but he had declined to avail himself of counsel until after the entry of judgment.

Thereafter, the trial court, *Elgo, J.*, conducted a hearing on the motion to open, which was attended by both parties. At that hearing, the defendant argued that he had not defended against the action because he had accepted the notion that it was fair to pay the plaintiffs the $7025 that had been estimated to complete the project, but that he had obtained counsel once damages "blossom[ed]" to more than $90,000. The defendant contended that good cause existed to defend against the claim on the ground of mistake in the calculation of damages because only $7025 was owed pursuant to the plaintiffs' own estimate. The plaintiffs' counsel explained the components of the damages award and the basis for the change in the estimates and noted that Judge Graham could have awarded double or treble damages under CUTPA.

The trial court made no findings at the hearing and thereafter issued an order summarily sustaining the plaintiffs' written objection to the motion to open the judgment. The defendant did not seek an articulation of the basis of the trial court's decision. He did file a motion for reconsideration, alleging, inter alia, that new grounds had come to light, namely, that the plaintiffs' counsel either intentionally or negligently had misled the defendant as to the extent of the plaintiffs' claim. The trial court summarily denied the motion.

The defendant appealed from the trial court's judgment to the Appellate Court, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. On appeal, the defendant contends that the trial court's decision denying the motion to open was an abuse of discretion because: (1) his decision not to defend against the claims was the result of "fraud, deceit and trickery"; and (2) the underlying judgment was based on a misapplication of the law of damages. Specifically, with respect to the first claim, the defendant contends that fraud is demonstrated by the fact that Michael Flater's affidavit of debt alleged that the cost of completing the project was $7025 but that the plaintiffs subsequently submitted affidavits alleging more than $66,000 in corrective work. With respect to the second claim, the defendant contends that the correct measure of damages should have been no more than the $26,231 paid by the plaintiffs plus the cost to restore the property to its *original* condition by removing the work performed, not the $26,231 paid plus the cost to *replace* the work with a new four season room. The defendant further contends that equitable considerations dictate that the judgment be opened.

In response, the plaintiffs contend that the defendant has raised claims on appeal that were not raised at the hearing on the motion to open and thus he is not entitled

to a review of those claims. The plaintiffs further contend that the trial court did not abuse its discretion, and the equities do not weigh in favor of the defendant. When questioned at oral argument before this court, the plaintiffs conceded that the damages award was incorrect with respect to the counts relating to breach of contract; see footnote 3 of this opinion; because the plaintiffs essentially were getting the completed project at no cost to themselves. The plaintiffs contended, however, that this court nonetheless should affirm the judgment because: (1) that issue goes to the merits of Judge Graham's decision in the underlying judgment, which properly cannot be considered in this court's review of Judge Elgo's denial of the defendant's motion to open; (2) the damages award is not excessive because double damages would have been justified on the CUTPA count had they further pursued them;[4] and (3) the defendant declined to pursue other procedural mechanisms available to reduce a judgment that was excessive as a matter of law.[5] We agree with the plaintiffs.

The principles guiding our review are well settled. Except in cases in which a judgment has been obtained by fraud, duress or mutual mistake or, under certain circumstances, where newly discovered evidence exists to challenge the judgment, the power of a court to open a judgment after a default has entered is controlled by

---

[4] We note that, although the plaintiffs clearly sought punitive damages for the CUTPA violation in both their complaint and the order of payment, the record does not reflect the express findings from Judge Graham necessary to support such damages. See *Gargano* v. *Heyman*, 203 Conn. 616, 622, 525 A.2d 1343 (1987) ("in order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights" [internal quotation marks omitted]). Although Judge Graham did render judgment in favor of the plaintiffs on the CUTPA count, the plaintiffs expressly represented to Judge Elgo at the hearing on the motion to open that Judge Graham had not awarded double or treble damages on that count.

[5] Among the corrective measures that the plaintiffs identify are a motion for remittitur and a motion to set aside the judgment.

statute. *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 106–108, 952 A.2d 1 (2008); *In re Jonathan M.*, 255 Conn. 208, 238, 764 A.2d 739 (2001); *Jacobson* v. *Robington*, 139 Conn. 532, 536, 95 A.2d 66 (1953). General Statutes § 52-212 (a) sets forth two requirements to open a judgment and provides in relevant part: "Any judgment rendered or decree passed upon a default or nonsuit in the Superior Court may be set aside, within four months following the date on which it was rendered or passed, and the case reinstated on the docket . . . upon the complaint or written motion of any party or person prejudiced thereby, *showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment* or the passage of the decree, *and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense.*" (Emphasis added.)

"We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, supra, 288 Conn. 95.

"When a motion to open is filed more than twenty days after the judgment [as in the present case], the appeal from the denial of that motion can test only whether the trial court abused its discretion in failing to open the judgment and not the propriety of the merits of the underlying judgment. . . . This is so because otherwise the same issues that could have been resolved if timely raised would nevertheless be resolved, which would, in effect, extend the time to appeal." (Citation omitted; internal quotation marks

omitted.) *Tiber Holding Corp.* v. *Greenberg*, 36 Conn. App. 670, 671, 652 A.2d 1063 (1995); accord *Altberg* v. *Paul Kovacs Tire Shop, Inc.*, 31 Conn. App. 634, 640, 626 A.2d 804 (1993); see also *Farmers & Mechanics Savings Bank* v. *Sullivan*, 216 Conn. 341, 356, 579 A.2d 1054 (1990) (citing this principle in context of motion to open judgment of strict foreclosure).

Because, as a general matter, the defendant is not entitled to appellate review of claims that were not raised in the trial court or on which there is an inadequate record; *Smith* v. *Andrews*, 289 Conn. 61, 77, 959 A.2d 597 (2008); *Mastrolillo* v. *Danbury*, 61 Conn. App. 693, 697, 767 A.2d 1232 (2001); we turn to the pertinent parts of the record. The defendant asserted in his motion to open the judgment that "[a] good defense exists to the matter, namely the claim for damages is grossly inflated and exposes not only the defendant, but the Home Improvement Contractor Guarantee Fund, to unreasonable expense . . . ."[6] He further contended, presumably to satisfy the requirement under § 52-212 of reasonable cause preventing him from timely asserting that defense, that he "did not have the benefit of counsel . . . ." At the hearing on the motion, the defendant's counsel asserted: "[R]eally what it comes down to is that we can't for the life of us figure out how a $7025 debt can blossom into . . . [n]inety-something thousand dollars . . . . [The defendant] needs an opportunity to defend himself just for the simple—even if he admits the allegations, he has a right to defend himself as to the amount of damages because we need to get some . . . indication of how we got to that figure." When the trial court explained that the defendant

---

[6] The defendant refers to the fund created under the Connecticut Home Improvement Act, General Statutes § 20-418 et seq., that licensed contractors are required to pay into and from which homeowners may apply for unpaid amounts of judgments rendered against such contractors for violations of the act, limited to actual damages and costs not to exceed $15,000 per claim. See General Statutes § 20-432 (Home Improvement Guaranty Fund).

needed to couch his argument in terms of the basis for granting a motion to open under § 52-212, the defendant's counsel stated: "[A] good defense . . . exists to the amounts of money that are being claimed here." He asserted that there was a "mistake" in the calculation of damages because the plaintiffs were entitled only to the approximately $7000 in work that the defendant had not performed, not that amount plus the more than $26,000 that the plaintiffs paid for the work that he had performed.[7] The defendant's counsel then argued that the damages were grossly disproportionate to the defendant's expectation that he would be required to pay $7000. The trial court then asked the plaintiffs how the $92,000 damages figured was arrived at, and they explained the basis for the initial estimate to correct the work and the subsequent estimates to replace the entire structure. The defendant's counsel reiterated that the defendant had thought that the damages were going to be approximately $7000 based on the affidavit of debt filed with the motion for judgment and counsel argued that this was a reasonable expectation.

Turning to the defendant's first claim, it is apparent, in light of this record, that the defendant did not raise a claim of fraud, deceit or trickery in the proceedings on the motion to open. There is no hint of an argument that the plaintiffs intended to induce the defendant not to attend the hearing in damages by submitting an intentionally understated estimate, let alone the evidentiary

---

[7] The defendant's counsel explained: "[I]n the affidavit of debt . . . [the plaintiffs] list as elements of damages both the $26,000 that [the defendant] was paid plus the $7000 that it would cost to finish the project. Well, those two don't go together. They received $26,000, or they paid $26,000; he did some of that work. He did all but $7000 of that work. So their damage is not the $26,000 plus the [$7000]. Their damages are the [$7000] plus attorney's fees and whatever elements of damages. But—so there's a mistake right there in the calculation in the amount of damages, and that's defensible."

support necessary to prevail on such a claim.[8] See *Weinstein* v. *Weinstein*, 275 Conn. 671, 685, 882 A.2d 53 (2005) (setting forth elements of fraud). The defendant's belated and unsupported allegation in his motion for reconsideration that the plaintiffs intentionally or negligently had misled him does not remedy this defect. Therefore, the defendant is not entitled to review of this claim.

Turning to the defendant's miscalculation of damages claim, it does not appear that the specific claim raised on appeal is the one raised at the hearing on the motion to open the judgment. The claim on appeal is that, in the underlying judgment, Judge Graham improperly awarded both the full amount to complete the project ($66,600) and the money paid to the defendant ($26,231), and that, even if the work performed was of no value, the proper measure of damages should have been the $26,231 plus the cost to restore the property to its *original* condition. The claim that the defendant made at the hearing, however, was that good cause existed to defend against the claim on the ground of mistake in the calculation of damages because only $7025, the amount of the estimate to complete the proj-

[8] Because this claim impugns the reputation of the plaintiffs' counsel, we further note that the record is replete with evidence that the plaintiffs were seeking damages well in excess of $7025, such as the statement of damages filed with the complaint, the request for punitive damages and the order of payment filed with the motion for judgment on the default. Moreover, the plaintiffs consistently alleged that, in addition to the cost of completing the project, work defectively performed by the defendant might need to be replaced. Michael Flater's affidavit of debt specifically alleged that this option might need to be pursued and put the defendant on notice that the plaintiffs were seeking additional estimates. Had the defendant attended the hearing in damages, he would have heard the plaintiffs' credible explanation that those estimates had revealed an increased cost of performance due to the need to replace the defectively constructed structure in its entirety, rather than repair it.

ect, was owed, rather than that amount plus the $26,231 that had been paid to him for the work performed. The defendant never challenged the award of $66,600 in damages as it related to the cost of replacement; he never contended that cost of replacement, along with reimbursement of money paid, was an improper measure of damages. The defendant expressly claimed that he had no idea what the total damages amount was based on and sought the right to defend against it at a new hearing in damages.

The defendant's claim on appeal is further compromised by his failure to obtain a written decision from the trial court. See Practice Book §§ 64-1 and 66-5; *Citicorp Mortgage, Inc.* v. *Weinstein*, 52 Conn. App. 348, 349 n.2, 727 A.2d 720 (1999) (noting appellant's obligation to obtain written decision by way of motion to compel trial court to file memorandum of decision or motion for articulation). In the absence of such a decision, we have no way of knowing how the trial court construed the defendant's arguments or on what the court ultimately based its decision. At best, we can construe the court's summary order sustaining the plaintiffs' written objection to the motion to open the judgment as an indication that the trial court understood the defendant's claim consistent with the plaintiffs' objection thereto, namely, a matter of whether the plaintiffs had submitted competent evidence to support the damages.[9] That order also leaves open the possibility that the trial court sustained the plaintiffs' objection on the alternate

---

[9] Even if the trial court had understood the defendant's claim more broadly to contend that the plaintiffs were not entitled to both reimbursement of the payments they had made to the defendant and the cost of completing the project, whatever that cost of completion was, the court nonetheless could have concluded that the defendant lacked reasonable cause for failing to assert that defense. Specifically, the plaintiffs' order of payment, filed with the motion for judgment, expressly had sought damages for both the money paid to the defendant and the money due on the contract to complete the project, which put the defendant on notice of that defense.

ground that the defendant had not demonstrated that he had been "prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense." General Statutes § 52-212 (a). The defendant asserted in his motion to open that the reasonable cause was the lack of the benefit of counsel, which the trial court properly could have rejected. See *Rowe* v. *Goulet*, 89 Conn. App. 836, 841, 875 A.2d 564 (2005) (Stating in the context of a motion to open: "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . [T]he right of self-representation [however] provides no attendant license not to comply with relevant rules of procedural and substantive law." [Internal quotation marks omitted.]).

We are mindful that there undoubtedly was a miscalculation of damages on at least two of the four counts. For purposes of our review under the abuse of discretion standard, however, the good cause showing necessary to open the judgment cannot rely on the merits of the underlying judgment. *Tiber Holding Corp.* v. *Greenberg*, supra, 36 Conn. App. 671. Therefore, we cannot conclude that the trial court abused its discretion in denying the defendant's motion to open the judgment.

Accordingly, we turn to the defendant's claim that, even if the trial court did not abuse its discretion, equitable considerations counsel in favor of opening the judgment. This court has invoked its common-law authority to open a judgment outside the terms of § 52-212 in circumstances in which there is fraud, duress or mutual mistake or, under certain circumstances, where newly discovered evidence exists to question the judgment.

*Chapman Lumber, Inc.* v. *Tager*, supra, 288 Conn. 106–108; *In re Jonathan M.*, supra, 255 Conn. 238. None of those circumstances is present in this case. Although the Appellate Court has, in the absence of abuse of discretion in the denial of a motion to open, corrected plain error to effectuate the interests of justice; see, e.g., *Altberg* v. *Paul Kovacs Tire Shop, Inc.*, supra, 31 Conn. App. 642 (correcting judgment because damages awarded exceeded relief demanded in complaint); justice does not demand such action in the present case. The defendant declined to pursue any of the remedies available to him to aid him in correcting the mistake in the damages calculation, including filing a motion for remittitur pursuant to General Statutes § 52-228[10] or filing a motion to open the judgment within the appeals period, which would have allowed the reviewing court to consider the merits of the underlying judgment. *Tiber Holding Corp.* v. *Greenberg*, supra, 36 Conn. App. 671. "It is a well-established principle that courts of equity will not relieve against the operation of judgments rendered through the negligence or inattention of the party claiming to be aggrieved . . . ." (Internal quotation marks omitted.) *Farmers & Mechanics Savings Bank* v. *Sullivan*, supra, 216 Conn. 360. We also are mindful that, had the defendant timely raised and succeeded on his miscalculation of damages claim, it is likely that the plaintiffs would have pressed their claim for double damages under CUTPA. Under the facts alleged, the plaintiffs may have prevailed on their punitive damages claim, which would have brought their total damages

---

[10] General Statutes § 52-228 provides: "If any judgment is rendered, by mistake or clerical error, for a larger sum than is due, the party recovering the judgment may have the amount of the judgment decreased by remittitur to the amount which is due, provided reasonable notice has been given to the adverse party or his attorney. The court may thereupon order the record of the judgment to be corrected, and affirm the judgment for the amount to which it has been decreased."

to an amount approximating the amount of the actual judgment.[11]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[11] "In an action for breach of contract, the general rule is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that he would have been in had the contract been performed." (Internal quotation marks omitted.) *Schlicher* v. *Schwartz*, 58 Conn. App. 80, 88, 752 A.2d 517 (2000). If this rule had been applied, the correct measure of damages on the breach of contract claim would have been the actual cost of completing the project ($66,600) less the amount due under the contract for completion. Double damages, therefore, presumably would have brought the award to at least the amount of the actual judgment. Alternatively, had the defendant attended the hearing on damages, he may have argued that the court should limit the damages to the diminished value of the property. See *Vezina* v. *Nautilus Pools, Inc.*, 27 Conn. App. 810, 821–22, 610 A.2d 1312 (1992) ("Where, however, expectation damages greatly exceed the diminished value of the property, the award of damages is limited to the diminished value of the property. . . . Although the costs of repair may more precisely place the injured party in the same physical position as full performance, policy dictates limitation to diminution of value to avoid unreasonable economic waste." [Internal quotation marks omitted.]).