******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MULLINS, J., with whom ROBINSON, C. J., joins, dissenting. The trial court denied the motion to open filed by the defendants, Aniello Dizenzo and 1188 Stratford Avenue, LLC, because "[it was] untimely, *and* it ha[d] no basis." (Emphasis added.) This ruling can be read in one of two ways. As the majority contends, it could mean that the court believed that the motion was untimely, and, because it was untimely, the court applied (or at least was required to apply) its inherent, common-law authority to review the untimely motion solely for fraud, duress, or mutual mistake. Another plausible meaning, though, is that the court denied the motion on two distinct, alternative bases: because it was untimely and also because it had no basis, i.e., it failed on its merits under General Statutes (Rev. to 2019) § 52-212.[1] In my view, this second reading is not only plausible but the far better reading, given that the trial court never once mentioned, or questioned the parties on, the elements needed to prevail on an untimely motion to open. Rather, it focused exclusively on the elements necessary to prevail under § 52-212.

Although I believe that the trial court's ruling rests on two separate bases, at worst, the ruling is unclear. Consequently, I believe that reversal is irreconcilable with our well established, highly deferential standard of review. There has been no motion for articulation to clarify which of these two readings the court intended. Under such circumstances, we typically presume that the trial court was correct and affirm the judgment if there is any legitimate basis for doing so. Here, there is such a legitimate basis: nothing in Dizenzo's affidavit in support of the defendants' motion to open established with particularity, as the defendants must under § 52-212, that they were prevented by mistake from raising a valid defense. And, after a hearing at which the trial

---

[1] All references to § 52-212 are to the 2019 revision of the statute.

court focused on the issue of whether the defendants' alleged mistake was a valid one that prevented them from appearing, the court concluded that the motion "ha[d] no basis." Because the defendants failed to provide a reasonable justification for their failure to appear and defend, and because the Appellate Court majority properly applied well established law, I must respectfully dissent.

Although the majority aptly lays out the facts, a few are worth highlighting to illuminate my position. Dizenzo leased the subject vehicle in November, 2012, using funds provided by the plaintiff finance company, Mercedes-Benz Financial. He drove the vehicle and made his monthly payments under the lease/financing agreement for fifteen months, through February, 2014. At that point, when the dealership was unable to provide service that he deemed satisfactory, Dizenzo unilaterally declared that the agreement was void, simply left the car at the dealership, and ceased making payments to the plaintiff.

In February, 2017, when the defendants undisputedly received notice of this action, they did not file an appearance. They also filed no appearance six months later, in August, 2017, when the defendants received notice of the plaintiff's motion for default; or the following month, in September, 2017, when the defendants received notice that they had been defaulted;[2] or in May, 2019, when the defendants received notice of the plaintiff's motion for judgment; or in June, 2019, when the defendants received notice that the trial court rendered a default judgment. The defendants did not enter an appearance, engage counsel, or take any measures to defend the action until July, 2019, when they were

---

[2] The notice on the default for failing to appear specifically informed the defendants that, "[i]f you file an appearance in this case before the judgment is entered against you, the default for failure to appear will automatically be set aside by the clerk. Practice Book [§] 17-20 [d]."

served with postjudgment discovery. In the defendants' motion to open and Dizenzo's supporting affidavit, the only explanation offered for this ongoing failure to appear and defend the suit was the assertion that, "when he was sued in 2017, [Dizenzo] mistakenly thought this matter was resolved . . . ." The affidavit does not indicate why Dizenzo continued to hold that belief *after he was sued*, as he received a series of notices that the plaintiff was pursuing a default and, later, a default judgment.

## I

Like the majority, I am troubled by the trial court's determination that the defendants' motion to open was untimely, after both the defendants' counsel and court staff made the court aware that the motion was timely. Even the court itself acknowledged that the motion was timely.[3] The court's ruling that the motion was untimely was clearly erroneous, as the motion was filed two months after the court rendered judgment. Unlike the majority, I do not find that that erroneous determination could not be untethered from the court's separate determination that the motion also had no basis. Nor do I find that the untimely designation dictated how the court actually conducted the hearing.

My analysis centers on the highly deferential standard by which we review a trial court's denial of a motion to open a default judgment. "Whether proceeding under the common law or a statute, the action of a trial court in granting or [denying a motion] to open a judgment

---

[3] During the hearing, the trial court miscounted the months and, as a result, believed that the defendants had failed to timely file their motion to open within four months from when judgment was rendered, as § 52-212 (a) requires. Specifically, the court thought that five months, rather than two, had passed since the judgment was rendered, but it was promptly corrected by the defendants' counsel that the motion to open was timely. Acknowledging that the motion was timely, the court responded: "All right. So, we are barely in time."

is, generally, within the judicial discretion of such court, and its action will not be disturbed on appeal unless it clearly appears that the trial court has abused its discretion." (Internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Rothermel*, 339 Conn. 366, 381, 260 A.3d 1187 (2021). "In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed [as] long as the [trial] court could reasonably conclude as it did." (Internal quotation marks omitted.) *Conroy* v. *Idlibi*, 343 Conn. 201, 204, 272 A.3d 1121 (2022). Indeed, we have long recognized that "the orderly administration of justice *requires* that relief be denied unless the moving party alleges and shows reasonable cause for relief under the statute." (Emphasis added.) *Testa* v. *Carrolls Hamburger System, Inc.*, 154 Conn. 294, 300, 224 A.2d 739 (1966).

In cases in which the record is ambiguous or the basis for the trial court's denial of a motion to open is unclear, and there is no motion for articulation, we consistently have affirmed the judgment, giving the trial court the benefit of the doubt and construing the record in the light most favorable to sustaining the judgment of default.[4] We have deferred to the discretion of the trial court even when it made inconsistent or erroneous findings. See, e.g., *Jenks* v. *Jenks*, 232 Conn. 750, 754–56, 657 A.2d 1107 (1995) (when supporting record was

---

[4] See, e.g., *Priest* v. *Edmonds*, 295 Conn. 132, 139–40, 989 A.2d 588 (2010) (declining to review defendant's claim when trial court simply marked defendant's motion to open " 'denied' " and could have done so for various reasons); *Flater* v. *Grace*, 291 Conn. 410, 423–24, 969 A.2d 157 (2009) ("[We must assume] . . . that the trial court understood the defendant's claim consistent with the plaintiffs' objection thereto . . . . [The] order . . . leaves open the possibility that the trial court sustained the plaintiffs' objection on the [alternative] ground that the defendant had not demonstrated that he had been 'prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense.' " (Footnote omitted.)).

"sparse," trial court made inconsistent findings as to motion to open, and plaintiff did not seek articulation, record was construed to support judgment); *Kiessling* v. *Kiessling*, 134 Conn. 564, 567, 59 A.2d 532 (1948) ("[i]f the default judgment was proper on any of the grounds alleged, it should stand"); *Genung's, Inc.* v. *Rice*, 33 Conn. Supp. 554, 556–59, 362 A.2d 540 (1976) (subjecting trial court's erroneous finding to harmless error analysis and upholding denial of motion to vacate default judgment on alternative grounds).

In short, the fact that there are two plausible interpretations of the trial court's order does not give rise to the clear abuse of discretion necessary to overturn the judgment, especially in the absence of a motion for articulation. The only question we must answer is whether, drawing every reasonable presumption and construing any ambiguities in favor of upholding the judgment, the trial court reasonably could have concluded that the defendants had failed to satisfy their burden under at least one prong of § 52-212 (a). See, e.g., *Karanda* v. *Bradford*, 210 Conn. App. 703, 713, 270 A.3d 743 (2022) (describing two prongs of § 52-212 (a)). I believe it could.

## II

### A

The majority employs a mechanical approach to the trial court's decision that I do not share. It concludes that the initial timeliness finding is dispositive and necessarily dictates which standard the court applies: § 52-212 for timely filed motions, or the court's common-law authority to consider untimely motions. This view leaves no room for the common practice by which a court issues alternative rulings denying a motion, such as when a motion is untimely but the defendants also failed to make the showing necessary to satisfy the substantive requirements of § 52-212.

To start, there is no dispute that the defendants' motion to open was filed pursuant to § 52-212; although the motion does not explicitly reference § 52-212, it invokes the language and legal standard of that statute, alleging that the defendants "have good defenses" and that they mistakenly thought that the matter had been resolved. As such, the defendants had to satisfy *all* of § 52-212's requirements: (1) the motion must be timely; General Statutes (Rev. to 2019) § 52-212 (a); (2) it must be verified by the oath of the defendants or their attorney; General Statutes (Rev. to 2019) § 52-212 (c); (3) it must demonstrate that the defendants had a good cause of action or defense at the time of judgment; General Statutes (Rev. to 2019) § 52-212 (a); and (4) it must "particularly set forth" how mistake, accident, or other reasonable cause prevented them from prosecuting or defending the action. General Statutes (Rev. to 2019) § 52-212 (a) and (c). Failure to satisfy any one of these elements is grounds to deny the motion to open. Accordingly, the trial court, in concluding that § 52-212 was not satisfied, could have found that any one of these elements, or any combination thereof, had not been established. Nothing in the law prevents the court from denying a motion as untimely and, in the alternative, denying it because it fails on the merits.

In fact, the very thing that the majority says the trial court cannot possibly have intended to do—determined that the motion to open was untimely but proceeded also to assess whether it satisfied the requirements of § 52-212—is precisely what the Appellate Court did in *Lewis* v. *Bowden*, 166 Conn. App. 400, 141 A.3d 998 (2016). In that case, the defaulted father moved to open a judgment of paternity approximately twenty-seven years after the trial court rendered judgment. Id., 402. The Appellate Court observed that "nearly thirty years [had] passed before he tried to open the judgment." Id., 404. Nevertheless, the court stated that "[a] motion to

open a default judgment is governed by . . . § 52-212"; id., 402; it recited the language of that statute establishing the reasonable cause standard, and it proceeded to assess the merits of the father's claim according to that statutory standard. See id., 403–404; cf. *Celanese Fiber, Division of Celanese of Canada, Ltd.* v. *Pic Yarns, Inc.,* 184 Conn. 461, 465–67, 440 A.2d 159 (1981) (with respect to closely related statute, General Statutes (Rev. to 1979) § 52-212a, governing opening of civil judgments and decrees, concluding that motion to open was properly denied because it was untimely and there was no claim of fraud or mistake under common-law standard, but proceeding to explain that, even assuming arguendo that motion had been timely filed within four month limitation period, trial court would have been well within its discretion to deny motion on merits under statutory standard).

It is not uncommon for courts to follow this sort of belt-and-suspenders approach, determining that a motion, claim, defense, or argument fails on multiple, alternative grounds, both procedural and substantive.[5] Here, the trial court appears to have done just that by ruling that the defendants' motion to open was untimely *and* that it had no basis. I fail to see why that is not one plausible reading of the trial court's decision in this case. And, if it is, we are bound to adopt it.[6]

---

[5] See, e.g., *Mitchell* v. *State*, 338 Conn. 66, 88, 257 A.3d 259 (2021); *In re Angela V.*, 204 Conn. App. 746, 757–58, 254 A.3d 1042, cert. denied, 337 Conn. 907, 252 A.3d 365 (2021); *Henderson* v. *Commissioner of Correction*, 181 Conn. App. 778, 780, 790, 189 A.3d 135, cert. denied, 329 Conn. 911, 186 A.3d 707 (2018); see also, e.g., *Priest* v. *Edmonds*, 295 Conn. 132, 139, 989 A.2d 588 (2010).

[6] The majority suggests that "the record does not conclusively establish" whether the trial court followed this sort of belt-and-suspenders approach. But we have never required that the record conclusively establish that the trial court got it *right*. Rather, we have said time and again that we must make every reasonable presumption in favor of upholding the judgment, construe ambiguities and gaps in the record against the complainant, in the absence of an articulation, and then reverse only if it is clear that the trial court got it *wrong*. See, e.g., *Bell Food Services, Inc.* v. *Sherbacow*, 217

As noted, the defendants filed their motion to open pursuant to § 52-212—the majority concedes as much, and that is how the parties argued the case. See footnote 1 of the majority opinion and accompanying text. Aside from the trial court's erroneous calculation of the timeliness of the motion, when the court conducted the hearing, it focused on determining whether the defendants had good defenses that they were prevented from raising. There is no mention whatsoever in the motion, the accompanying affidavit, or the hearing transcript of fraud, duress, mutual mistake, or anything else that might invoke, or suggest that the court was applying, the court's inherent, common-law authority to consider untimely motions to open. Again, the majority concedes as much.

Indeed, the entire hearing was focused on, and all the questions posed by the trial court were directed at, the various statutory requirements imposed by § 52-212. The trial court began by questioning the defendants' counsel as to the timeliness of the motion to open. The court then entertained a back-and-forth between the parties as to the first substantive prong of § 52-212 (a), the existence of a potentially meritorious defense. See, e.g., *Karanda* v. *Bradford*, supra, 210 Conn. App. 713. The alleged meritorious defense was that the car was essentially a lemon, given the repeated problems and safety issues Dizenzo had experienced. Thus, the defendants' counsel argued that the defendants had the right to terminate the lease and would raise this as a part of their potential counterclaim. The plaintiff's counsel countered that this defense was time barred. The court also pushed the defendants' counsel on the relevance of the defendants' purported claims against the automobile dealership, which is not the plaintiff, given that the plaintiff finance company is a different entity. During

Conn. 476, 482, 586 A.2d 1157 (1991); see also, e.g., *Doe* v. *Bemer*, 215 Conn. App. 504, 517, 283 A.3d 1074 (2022).

this dialogue, the defendants' counsel invited the court to follow the example of a case in which another judge of the Superior Court had opened a judgment "within the four [month]" limitation period and allowed the defaulted party to plead in a potentially meritorious counterclaim.

As to the second substantive prong of § 52-212 (a), the trial court pressed on the defendants' claim that they were prevented by mistake from asserting a defense. See, e.g., *Karanda* v. *Bradford*, supra, 210 Conn. App. 713. The court questioned both parties about this prong of the test, seeking any support for the defendants' purported belief that the plaintiff had not intended to proceed with the action. The court questioned the defendants' counsel at length as to the reasonableness of Dizenzo's mistaken belief that the action was not going forward and his attendant decision not to file an appearance or to retain counsel, including the facts that (1) the affidavit itself made no mention of the supposed conversations in which the plaintiff allegedly represented that the action would not proceed, (2) Dizenzo failed to obtain any written confirmation of this purported agreement, despite being an experienced business owner, and (3) any representations that the dealership made to Dizenzo would be irrelevant insofar as the finance company was the plaintiff.

When the trial court ended the hearing and denied the defendants' motion to open, stating that "[the motion is] untimely, and it has no basis," this ruling came directly on the heels of this discussion, in which the court had questioned the parties as to both substantive prongs of § 52-212 (a), and in which the defendants' counsel had been unable to provide any support for the mistake theory, other than counsel's own representations, or any other explanation (aside from negligence) of how the defendants were prevented from appearing. There was no discussion of, or reference to, the com-

mon-law standard. On the basis of the foregoing, after the unfounded timeliness determination, the court clearly applied the § 52-212 standard in denying the motion.

B

The record clearly supports the conclusion that the defendants had not met their burden of demonstrating good cause under the second substantive prong of § 52-212 (a). Under § 52-212 (a), a defaulted party must make a showing that it "was prevented by mistake, accident or other reasonable cause from . . . making the defense." Section 52-212 (c) further requires that the defaulted party "*particularly* set forth the reason why [that party] failed to appear." (Emphasis added.) In the present case, the only reason the defendants offered for the failure to appear is their own mistake. The defendants, in their motion to open and Dizenzo's affidavit, alleged only the conclusory statement that they "mistakenly thought this matter was resolved" when the plaintiff filed suit in 2017. That hardly qualifies as the particularized showing required by § 52-212 (c). See, e.g., *Eastern Elevator Co.* v. *Scalzi*, 193 Conn. 128, 132–34, 474 A.2d 456 (1984).

For the sake of argument, however, suppose we set aside the defendants' burden of production, look beyond the conclusory allegation of mistake, and accept the representations of counsel during the hearing that Dizenzo believed he had the assurances of the plaintiff that the action would not proceed. The question is whether even that would qualify as a *reasonable* mistake under § 52-212 so as to justify a failure to appear and defend. It would not.

We have long held that negligence does not qualify as a "mistake" for purposes of § 52-212 (a). See, e.g., *Pantlin & Chananie Development Corp.* v. *Hartford Cement & Building Supply Co.*, 196 Conn. 233, 240–41, 492 A.2d 159 (1985) ("[n]egligence is no ground for

vacating a judgment, and it has been consistently held that the denial of a motion to open a default judgment should not be held an abuse of discretion [when] the failure to assert a defense was the result of negligence"). When a party receives notice that it has been sued, the law expects that the party will enter a timely appearance and take steps to defend the action. See, e.g., *Disturco* v. *Gates in New Canaan, LLC*, 204 Conn. App. 526, 535, 253 A.3d 1033 (2021) ("[§ 52-212] is remedial, but it cannot be so construed as to authorize relief . . . [when] a defendant indeed has received proper notice of the underlying action and the . . . motion for default yet failed to file an appearance" (citation omitted; internal quotation marks omitted)); *Fontaine* v. *Thomas*, 51 Conn. App. 77, 83, 720 A.2d 264 (1998) ("[A]lthough the defendant had actual notice of the pending case . . . he failed to take any action . . . . [Although] his mistaken perception of what steps he had to take [may have] prevented him from defending, his error does not constitute a . . . mistake . . . ."). Failure to act born of carelessness, indifference, or ignorance of the law simply does not excuse default. See, e.g., 47 Am. Jur. 2d 50–52, Judgments § 659 (2017); see also, e.g., *Dziedzic* v. *Pine Island Marina, LLC*, 143 Conn. App. 644, 652–53, 72 A.3d 406 (2013) ("[t]he fact that the defendant chose to ignore [the legal] process, and now rues this decision, is not a basis to open . . . the judgment" (internal quotation marks omitted)).

Importantly, this rule applies even when the defendant fails to appear out of a mistaken belief that the plaintiff does not intend to prosecute the action. See, e.g., *Giano* v. *Salvatore*, 136 Conn. App. 834, 844, 46 A.3d 996 ("[t]he defendant's mistaken belief that the plaintiff would be withdrawing the case is no excuse for her failure to plead"), cert. denied, 307 Conn. 926, 55 A.3d 567 (2012); *Nelson* v. *Contracting Group, LLC*,

127 Conn. App. 45, 49–50, 14 A.3d 1009 (2011) (motion to open was properly denied when defendant failed to defend because of mistaken belief that plaintiff's counsel would contact him before moving forward with litigation); *Berzins* v. *Berzins*, 105 Conn. App. 648, 652–53, 938 A.2d 1281 ("even if the defendant had relied on any statements made by the plaintiff, his subsequent negligence supersedes his purported reliance . . . [as he] could have called the court at any point to inquire about the status of the action" (internal quotation marks omitted)), cert. denied, 289 Conn. 932, 958 A.2d 156 (2008); *Rino Gnesi Co.* v. *Sbriglio*, 83 Conn. App. 707, 710, 713, 850 A.2d 1118 (2004) (defendants' alleged misunderstanding following conversation with plaintiff's counsel regarding case status was deemed negligent and, therefore, was not valid justification under § 52-212).

These principles are illustrated nicely in *Pelletier* v. *Paradis*, 4 Conn. Cir. 396, 232 A.2d 925 (1966), cert. denied, 154 Conn. 745, 226 A.2d 520 (1967). The defendant in that case moved to open a default judgment, contending that his attorney had advised him that he need not defend the suit because the applicable one year limitation period had expired, and, thus, the plaintiff had no legal claim against him. Id., 398. He further alleged that, after his attorney offered to discuss the matter with the plaintiff's attorney, he heard nothing more from the plaintiff for nearly one year, and his attorney then inadvertently forgot to respond to the summons. See id., 398–99. On the basis of these representations, the trial court granted the defendant's motion to open the default judgment. Id., 399.

The Appellate Division of the Circuit Court reversed. See id., 400. It acknowledged that a trial court has broad discretion in such matters. See id., 397–98. But it concluded, as a matter of law, that "[t]he defendant's failure to appear and assert his defense . . . was not due to

any mistake, accident or other reasonable cause, *unmixed with negligence or inattention*, so as to constitute a sufficient reason to warrant the opening of the judgment." (Emphasis added.) Id., 399–400. The Appellate Division articulated the following rule: "A party to a suit in court must give it the care and attention [that] a man of ordinary prudence usually bestows [on] his important business. If he fails to do so he cannot obtain relief from a judgment resulting from his negligent failure to take the proceedings required for his protection." (Internal quotation marks omitted.) Id., 399.

The present action fits squarely within the previously mentioned paradigm. Even if there was an initial agreement not to pursue this action, the plaintiff clearly became serious enough about the matter to hire counsel, draft a complaint, pay the filing fee, and file suit. Employees at the Mercedes-Benz dealership may well have told Dizenzo that they did not believe that the plaintiff—the finance company—planned to proceed with the action. The employees might have been mistaken about that. The plaintiff also might have changed course at some point without informing the dealership or the defendants. Dizenzo may have simply misunderstood from the outset whether there was an agreement not to pursue this matter.

The one thing Dizenzo knew for sure, when he received notice of the lawsuit, was that he had been sued. He also knew from the filing of the default notice that the case was moving forward and that, if he simply filed an appearance, the default would be set aside. The defendants' reliance on the prior purported agreement with the plaintiff does not excuse their failure to act, particularly after they had received notice of the action and the default. At minimum, as the Appellate Court noted in *Berzins* v. *Berzins*, supra, 105 Conn. App. 648, they "could have called the court at any point to inquire about the status of the action." Id., 653. Had they taken

the minimal, prudent step of filing an appearance, with or without legal representation, then the defendants would not have been defaulted. The law deems the failure to do so negligent, and a mistake arising from or intermixed with one's own negligence is not a valid mistake under § 52-212.

C

The majority says that, even if the trial court did apply the correct legal standard, its application of that standard was tainted by its mistaken belief that the defendants' motion to open was untimely. This, the majority contends, is because the inquiry embedded in the second prong of § 52-212 (a), which asks whether there was good cause for the default, "has a temporal component because . . . depending on the circumstances presented, it may include consideration of the length of time that the defendants were prevented from asserting such a defense . . . ." The majority suggests that an evidentiary hearing will be required to resolve what it calls this "critical factual dispute . . . ." Footnote 5 of the majority opinion.

I disagree for two reasons. First, as I just discussed, a negligent mistake is not a valid mistake under § 52-212. Failure to file an appearance after receiving notice of the lawsuit, and again after receiving notice of default, was negligent. As the trial court established through its questioning, even if the plaintiff had expressed some hesitation to proceed with the action, failure to get that agreement in writing also was negligent. Because there was no valid mistake that prevented the defendants from filing an appearance and raising a defense at the outset, I fail to see how the passage of additional time could transform what began, and persisted, as a series of negligent decisions into a reasonable mistake, so as to mislead the trial court. Nor is there any factual dispute that could be resolved on remand in a way

that would legitimize the defendants' ongoing failure to appear, given our well established law in this area.

Second, the record belies the theory that the trial court's analysis was influenced by its belief that the motion to open was untimely. At the hearing, the parties raised the question of timing. The plaintiff's counsel argued that any defenses relating to the 2012 lease were by then time barred, while the defendants' counsel countered that the plaintiff's two year delay in prosecuting the action was evidence that it never intended to prosecute it. But the trial court dismissed the importance of the lengthy delay, stating: "That's not proof of anything." Thus, the court itself appears not to have put much stock in the passage of time. It never said that the two year delay influenced its decision, and, without an articulation, I would not presume that it did.

D

Ultimately, the majority recognizes that it is not entirely clear whether the trial court's determination that the defendants' motion to open "ha[d] no basis" resulted from its application of the two part legal standard of § 52-212 (a) for timely filed motions or the common-law legal standard for untimely filed motions. The majority further recognizes that it would have been more prudent for the court to have stated the factual and legal bases for its decision or for the defendants to have sought clarification through a motion for articulation. See footnote 3 of the majority opinion. Normally, we *require* articulation before reading an unclear or ambiguous order in a manner that would result in reversal. See, e.g., *Speer* v. *Dept. of Agriculture*, 183 Conn. App. 298, 302, 192 A.3d 489 (2018) (when bases for trial court's denial of motion to open judgment of nonsuit were unclear from record, Appellate Court *sua sponte* ordered trial court to articulate factual and legal bases for denial). But the majority resolves that concern by

concluding that the application of either standard here was an error. I would not brush aside the necessity for an articulation so quickly.

In point of fact, the defendants' motion to open was a timely filed motion, and, as I explained, the trial court clearly applied the statutory standard for timely filed motions in its questioning during the hearing. Thus, in my view, the court got the timeliness analysis wrong, but it got the legal standard right. The majority contends that, even if it is true that the trial court applied the correct standard and reached a permissible result, that discretionary judgment must be reversed because the court should have used an *incorrect* standard in order to be consistent with its own erroneous timeliness finding. The erroneous timeliness finding was harmless here, and I am not aware of any case in which this court or the Appellate Court has reversed a discretionary judgment of a trial court on such a basis.

In any event, to the extent that the trial court's timeliness determination makes things at all unclear about which standard the court applied—one that is correct, or one that is incorrect—that is not grounds for reversal. In such cases, we either read the ambiguity to support the judgment or we give the trial court a fair opportunity to clarify its ruling. See, e.g., id.[7]

[7] The majority contends that following our established practice and ordering the trial court to articulate the basis for its decision would be of no avail under the particular circumstances of this case because "the basis the trial court provided for its decision was indisputably inaccurate . . . ." Footnote 3 of the majority opinion. I disagree. I see no reason to reverse the judgment and start the process from scratch simply because the trial court's error as to timeliness *might have* infected its analysis of the merits. Why not just ask? If we were to order an articulation, sua sponte, and the trial court were to clarify that (1) its determination that the defendants' motion to open had "no basis" was an independent, alternative basis for denying the motion under the second prong of § 52-212, and (2) that determination was unrelated to questions of timeliness and was predicated solely on the court's determination that the defendants had no valid basis for their failure to enter an appearance, aside from their own negligence, then I see no possible grounds for reversing the judgment.

In sum, although the trial court's ruling is not a model of clarity, the majority's interpretation of that ruling is certainly not the only, or, in my view, even the best, interpretation. In the absence of an articulation from the trial court, we are left with two plausible interpretations. I believe that the interpretation that makes the most sense and is supported by the record is that the court ruled alternatively that the defendants' motion to open was untimely, which was wrong, but also that the motion had no basis, which was correct. Because the mistake the defendants alleged here was not an excusable one under the law, and there was no demonstration that they were otherwise prevented from raising a valid defense, there is an adequate independent basis in the record to affirm the Appellate Court's judgment upholding the trial court's denial of the defendants' motion to open. Our standard of review dictates that we affirm. Accordingly, I respectfully dissent.